CORNELIUS BURROUGHS v. JONATHAN RICHMAN, surviving administrator of John Ellwell, dec.

It is competent on the cross-examination to ask the instrumental witness, "whether the defendant was not in a state of complete intoxication at the time the note was signed by him, and whether he was not, at that time, wholly unfit for the transaction of any kind of business in consequence of such intoxication."

Drunkenness may be insanity, but it is voluntary. It is no excuse from the consequences of crime, and sound policy requires it should not be against those acts affecting property, unless brought about by the other party, or unless it was so total, as to be palpable evidence of fraud in the person entering into a contract with one so intoxicated.

This was an action brought upon a promissory note in the court for the trial of small causes, and removed afterwards to the Court of Common Pleas of the county of Salem, by appeal. On the trial before that court, the defendant on the cross examination of the witness to the note, upon which the suit was founded, asked " whether the said defendant was not in a state of

complete intoxication at the time the note was signed by him, and whether he was not, at that time, wholly unfit for the transaction of any kind of business in consequence of such intoxication—"And the said court after objection, refused to allow the witness to answer the above question, and overruled the same."

The defendant also moved to nonsuit the plaintiff, on the ground of the insufficiency of the statement of demand, which was refused.

The judgment and proceedings of the Court of Common Pleas were removed into this court by certiorari. The reason principally relied upon for a reversal, was the overruling of the question to the instrumental witness on the cross examination.

*F. L. McCulloch* for plaintiff in certiorari, argued that the testimony offered was competent and legal.

An agreement is defined to be "*Aggregatio mentium*, when two or more minds are united in a thing done, or to be done, or where a mutual assent is given to do, or not to do, a particular act." 1 *Com. on Con.* 2.

The evidence went to prove, that there was no contract between the parties, and to contradict the existence of any agreement within the above definition. It would have shown, that at the time of the transaction, the defendant had not an agreeing mind, that there were not two minds united in a thing to be done, and that there was no assent given by the maker of the note. If the mind of the defendant was temporarily gone, or his faculties so far impaired by the intoxication under which he was laboring at the time the note was given, as to render him wholly unfit for the transaction of any kind of business, it follows, that there could have been no union of *two* minds in the contract, and no *mutual* assent to the transaction, and that no *agreement* between the parties could have been made, as the very essence of an agreement was wanting on the part of one of them.

This point has, however, been decided, and an opinion expressed upon it in the broadest language by Lord Ellenborough. The attesting witness to an instrument being called, he was asked on cross-examination, whether the defendant was not actually in a state of complete intoxication at the time he executed the agreement. Upon objection being made to the question, the

Lord Chief Justice remarked, you have alleged that there was an agreement between the parties, and this allegation you must prove, as it is put in issue by the plea of not guilty ; but there was no agreement between the parties, if the defendant was intoxicated in the manner supposed when he signed the paper— *he had not an agreeing mind.* *Pitt* v. *Smith,* 3 *Camp. Rep.* 33.

An obligation granted by a person, while he is in a state of absolute and total drunkenness, is ineffectual, &c. *Ersk. Inst.* 814. *cited in a note to* 3 *Camp.* 34.

*Chancellor Williamson* refused to enforce the performance of an agreement entered into with a man in a state of intoxication, although the party insisting on the performance did not contribute to make him intoxicated.

*Wilmurt* v. *Morgan, cited in Halst. Digest,* 248. The same principle was recognized in the case of *Curtis* v. *Hall,* 1 *South.* 361.

It is conceived that the above authorities prove the competency of the evidence offered, and that the Common Pleas erred in not permitting the attesting witness to the note, upon his cross examination, to answer the above question.

The inference, that this testimony if admitted, would have been conclusive, is too strong to be overlooked. Before the justice this testimony was admitted, and the jury unhesitatingly found a verdict for the defendant.

*A. L. Eakin* for the defendant in certiorari, argued that,

The rejection of the evidence offered by defendant was proper. The evidence is not before this court, and they cannot judge if properly or improperly rejected, and *omnia presumentur rite, &c.*

It is not pretended that the defendant was made drunk by the arts or procurement of the plaintiff, and the plea of drunkenness will not avail. 1 *Pow. on Con.* 18 ; 1 *South.* 361 ; 3 *P. Wm.* 131, *note a.* No man can avoid his obligation by stultifying himself or pleading his own turpitude in his defence. *Nemo allegans suam turpitudinem est audiendus.*

And if of a man's own procuring, it is not in law a ground to rescind his assent to a contract or agreement, whether the same respects his lands or goods, or the things concerning him. *Pow.*

*on Con.* 18. " And my *Ld. Coke* observes, in regard to inebriation—Although he who is drunk, is for the time, *non compos mentis*, yet his drunkenness does not extenuate his act or offence, nor turn to his avail; but it is a great offence in itself, and therefore aggravates his offence, and doth not derogate from the act which he did during that time, and that as well in cases touching his life, his lands, his goods, or any other thing that concerns him." 4 *Co.* 124.

The decision of *Ld. Ellenborough* in the case of *Pitt* v. *Smith*, although perhaps entitled to more deference, is of no more authority in New Jersey, than the decision of the justice before whom the cause was tried, and which is for the first time within my knowledge, cited by a party in this court.

The opinion of the court was rendered by Justice Drake.

DRAKE, J. The action below was prosecuted to recover the amount of a promissory note made by the plaintiff in certiorari to the administrators of John Ellwell, dec. A judgment was rendered in favor of the defendant, from which an appeal was taken to the Common Pleas of Salem county. On the trial of the appeal, the defendant, in that court, asked the instrumental witness to the note, " whether the said defendant was not in a state of complete intoxication at the time the note was signed by him, and whether he was not at that time, wholly unfit for the transaction of any kind of business in consequence of such intoxication?" This question was objected to, and it was overruled by the court. And herein it is said there was error.

From the manner in which this case has been presented before this court, there appears to be no pretence that if the question had not been overruled, but had been answered in the affirmative, it would have been followed by other evidence, shewing that this intoxication was by the procurement or instrumentality of the plaintiff. The point intended to be raised, I understand to be, whether, in a court of law, drunkenness can be set up as a defence against a contract, when not induced by the party seeking to enforce such contract? And in this point of view I shall consider it.

There are respectable authorities on both sides of this question. Lord Coke observes, that although he who is drunk, is

for the time *non compos mentis*, yet his drunkenness does not extenuate his act or offence, nor turn to his avail ; but it is a great offence in itself, and therefore aggravates his offence, and doth not derogate from the act which he did at that time ; and that as well in cases touching his life, his lands, his goods, or any thing that concerns him. 4 *Coke*, 124. An early exception to this general principle was made, in case the drunkenness were occasioned by the management or contrivance of him who gained the deed from the drunken man. 3 *Peere Wil.* 130. *A.* And this exception has been adjudged by this court as properly extended to a court of law. *Curtis* v. *Hall*, 1 *Southard*, 361. Equity has also relieved where an unfair advantage was taken of the person intoxicated, in that situation. 1 *Vezey*, 119 ; 1 *Washington's Rep.* 164 ; 1 *Heng. & Munford*, 69. And where a man is " so excessively drunk, that he is utterly deprived of the use of his reason or understanding." 1 *Vol. Fonblanque's Equity*, 68. By the Scotch law, persons in a state of *absolute drunkenness*, and consequently deprived of the exercise of reason, cannot oblige themselves ; but a lesser degree of drunkenness, which only darkens reason, has not the effect of annulling a contract. *Ersk. Inst.* 447. In the case of *Cooke* v. *Clayworth*, 18 *Vezey, jr.* 16, the master of the rolls said, that "as to that extreme state of intoxication, that deprives a man of his reason, I apprehend that even *at law*, it would invalidate a deed obtained from him while in that condition." Excessive drunkenness may be given in evidence under the plea of *non est factum*, 2 *Strange*, 1104. Justice Buller, in referring to the same case, says " the defendant may give in evidence that they made him sign it, when he was so drunk that he did not know what he did." *Bul. Nisi Prius*, 172. In the case of *Pitt* v. *Smith*, 3 *Camp. Rep.* 33, Lord Ellenborough permitted the question to be asked, " whether the defendant was not actually in a state of complete intoxication at the time he executed the agreement ? " and observed, " that there was no agreement between the parties, if the defendant was intoxicated in the manner supposed, when he signed the paper. He had not an agreeing mind."

In the case of *Tutt's Assignees* v. *Colvert*, 1 *Reports of the Const. Court of S. Carolina*, the distinction is taken between ex-

cessive drunkenness, and a lesser degree of it, and the former is adjudged to be a good defence to a contract.

In conformity with these respectable authorities, I an inclined to consider that a man should be permitted to defend himself, in a court of law, against his alleged contract, when, in the language of Fonblanque, he was at the time " so excessively drunk that he was utterly deprived of the use of reason." In such case, he so far loses his free agency, that he becomes a mere instrument in the hands of others, and, as expressed by Buller, may *be made* to do the act imputed to him. But it would be better that a court of law should never sanction such a defence, than that it should be extended to cases of partial intoxication, and doubtful mental alienation. A court of law can interfere, only by avoiding the contract. It cannot, like a court of equity, accommodate itself to the particular case, and oblige him who seeks relief to do equity. The consideration may have been fully adequate, or have been enjoyed and consumed, by a party unable to restore an equivalent. Both parties may have been in their cups. Indeed he, who was the cause of the mutual intoxication, may avail himself of a good bargain, and then seek to defeat the honest claims of the other party. Men have such various degrees of remaining acuteness, when under the influence of liquor, and the witnesses to a scene of revelry, are so apt to mistake or pervert the truth, that relaxing the rule at all, in a court of law, beyond the limit of complete and total drunkenness, would be fraught with the most dangerous consequences, and would be a prolific source of frauds. Drunkenness may be insanity, but it is *voluntary.* It is no excuse from the consequences of crime; why should it be against those of acts affecting property? Sound policy requires that it should not, unless brought about by the other party, or unless it was so total as to be palpable evidence of fraud in the person entering into a contract with one so intoxicated.

The question offered to be put in this case, was, according to these views, a proper one ; and if it appeared satisfactorily, that the defendant was so absolutely drunk, as to be deprived of the use of his understanding, the defence should have availed him. But the presumption should have been held to be

against him, even if partially intoxicated, and his being deprived of his reason at the time, should have been fully proved.

I am therefore of opinion that the judgment of the Common Pleas should be reversed, and the cause remitted to that court, that they may proceed therein according to law.